All the first case please. Mr. Fisher. Good morning, Your Honors. May it please the court, counsel, I'm representing the defendant in this case, Craig Davis. Mr. Davis was convicted in a jury trial of two counts of criminal sexual assault. Specifically, the jury found that on February 13, 2006, defendant had sexual intercourse with Bianca Thomas by the use of force and knowing that she was unable to give consent. The judge sentenced the defendant on the no consent conviction to a term of 10 years imprisonment. And that conviction and sentence were affirmed on direct appeal by this court. Subsequently, Mr. Davis filed a pro se post conviction petition. A public defender was appointed to represent him. Defendant filed an amended petition supported by two affidavits. Several claims were raised in the amended petition, but the primary claim was one of actual innocence. And the defendant submits that the claim of actual innocence supported by the two affidavits made a substantial showing of a constitutional violation. A due process claim of actual innocence sufficient to warrant an evidentiary hearing. The trial judge, however, granted the state's motion to dismiss the amended petition at the second stage without an evidentiary hearing. Defendant submits that the trial judge's ruling was erroneous, that the petition depended on the credibility of the affiance, and that credibility could only be resolved at an evidentiary hearing. He therefore respectfully asked this court on appeal to reverse the dismissal order and to remand this cause for third stage post conviction proceedings. But there's also a second issue concerning the public defender's apparent noncompliance with Rule 651C. In argument today, I'd like to address the first issue. Now, several witnesses testified at the trial, but there were three primary witnesses, Bianca Thomas, Craig Davis, and Dr. Philip Jobe. Thomas testified that on the night in question she had a headache and she took Vicodin, that it made her drowsy, it made her dizzy, she fell asleep on the couch. But at some point, the defendant picked her up, brought her into the bedroom, had sex with her against her will, and that because of the impact of the Vicodin, she was unable to resist, unable to give consent. Her testimony was corroborated by an expert witness, Dr. Philip Jobe, a pharmacologist, who testified that based on the amount of Vicodin she took, and based on the time she apparently took it, that it would have rendered her largely unresponsive at the time of the sexual incident, and thus unable to give consent. The defendant, meanwhile, testified on his own behalf that he and Ms. Thomas had consensual sex that night, that she knew what she was doing, and that they had had consensual sex on prior occasions. In the amended post-conviction petition, as I mentioned earlier, the defendant raised several issues, but his primary issue was a claim of actual innocence, and it was supported by two affidavits. The affidavits were from a pharmacist named Rodney Richmond, and from the complaining witness herself, Bianca Thomas. Now, Richmond's affidavit indicated that he had taught pharmacology and various other courses at Marshall University School of Medicine, Yale University School of Nursing, and the University of Pittsburgh School of Pharmacy. He had also testified in various jurisdictions about the effects of Vicodin, and according to his affidavit, based on the amount of Vicodin she took, and based on the time she took it, it would not have had full impact and effect until after the sexual incident, and therefore, she would have been able to either consent or not consent as she so chose. Bianca Thomas's affidavit stated that she lied at trial, that she had consensual sex with the defendant on the night in question, and that they had had consensual sex on prior occasions. Defendants submit that this amended petition supported by these affidavits makes a substantial showing of a claim of actual innocence, and of course, that's the defendant's burden at the second stage in order to advance the case to the third stage. Has the petition made a substantial showing of a constitutional violation? Now, unfortunately, when the parties argued the state's motion to dismiss, the arguments focused on one of the other issues raised in the amended petition, and that was a claim of perjury, simply that Bianca Thomas had perjured herself at trial, and therefore, the defendant should receive a new trial. Now, in arguments on the motion to dismiss, the state correctly pointed out that a claim of perjury can be raised in the 214.01 petition, but in order to be a cognizable post-conviction claim, it must be accompanied by an assertion of knowing use of perjury by the prosecution at trial, and there was no such assertion contained in the amended petition. When the judge announced, after the parties argued, the judge announced that he was granting the motion to dismiss, the only issue he really addressed was the perjury claim, and he stated, based on prevailing case law, because there was no assertion of knowing use of perjury by the prosecution, the petition had to be dismissed. Unfortunately, it appears that the judge here got sidetracked by this side issue. Now, certainly, his ruling was correct that the separate perjury claim could not survive, but that was separate from the primary claim of actual innocence, which did not require an assertion of knowing use of perjury. It therefore appears that the judge may have missed the forest for the trees here. Now, the State on Appeal argues that that was an adequate basis for dismissal of the amended petition. Certainly, it was an adequate basis for dismissal of the perjury charge, but the actual innocence claim was a separate claim. Combining the affidavits of Ms. Thomas and Mr. Richmond, that made a substantial showing, and that could not be resolved at the first or second stage. That had to go to an evidentiary hearing. Now, the State also argues on appeal that recantation affidavits are typically viewed with skepticism and thought to be unreliable, and that's true. But it's not really responsive to the argument the defendant makes on appeal. It certainly doesn't undermine the argument the defendant makes on appeal, because there's no rule in Illinois that recantation affidavits are automatically unreliable or inadmissible. In fact, the defendant has cited cases stating that a recantation affidavit can form the basis for a post-conviction petition. But clearly, the credibility of the affiant is something that has to be assessed by the trial judge. But it can't be done at the first or second stage. It can only be done at an evidentiary hearing. The State further contends on appeal that the affidavit of Mr. Richmond was lacking or inadequate, because according to the State, it only discloses his opinion or his conclusion, and such evidence cannot constitute evidence of newly discovered evidence of actual innocence. The State cites no authority in support of that proposition. The defendant's position is there are different types of evidence, obviously, that can be introduced at trial. Direct evidence, circumstantial evidence, opinion testimony. It's up to the trier of fact to decide which is more probative. Certainly, there was very important opinion or conclusion testimony presented at the trial by Dr. Jobe that I think probably played an important role in the jury's verdict. There's no reason why such evidence cannot form the basis for a post-conviction petition claim of actual innocence. Let me just say, I mean, isn't the hardier argument here the alleged victim's pre-contempt? I mean, that's where the meatier argument is. And with respect to the chemist, I mean, newly discovered evidence, is there any argument they couldn't have got a chemist expert, you know, at the original trial? Well, the interesting thing is that the record of the pretrial proceedings shows trial defense counsel, original trial defense counsel advising the judge prior to trial that she found it, in her words, vital to be able to find an expert to dispute the testimony of Dr. Jobe. Because, of course, through pretrial discovery, defense was on notice that the State was going to be calling Dr. Jobe to testify about the impact of Vicodin. So she thought it necessary to be able to find an expert, if possible, to counter his testimony. In support of such a claim, she asked for funds, since this was a public defender client, asked for funds to be able to hire such an expert if she could find such an expert. The judge agreed that he would allow that request. She subsequently asked for a continuance of the trial date because she was still trying to find an expert. The judge granted that request. In the end, apparently, she was unable to find anybody because the case proceeded to trial with only one expert, Dr. Jobe. So she recognized it was important, and apparently she couldn't find anybody. The State indicates in its brief that trial defense counsel was diligent. So it appears we can't fault her or fault the defendant. Certainly, if there's an evidentiary hearing, counsel could be called to the stand to ask, well, what did you do in terms of trying to find such an expert? But clearly she recognized the importance of it, was unable to find anybody. Now the defendant has found an individual who would, in fact, counter the testimony of Dr. Jobe. So the defendant submits that, whether it's opinion testimony, whether it's direct testimony, it shouldn't make a difference. Here it's the combination of the two affidavits, the two witnesses that support the claim of actual innocence. Let me just say, I'm trying to remember, the Vicodin, were there blood, was that based, the Vicodin evidence based solely on her testimony, how much she took, or were there blood tests on her? She testified she took, it's later on, and I don't know from the record exactly how much later on, but later on at some point some relatives come over and she's unresponsive, she's taken to the hospital, and the doctor testified she had apparently an overdose of some drug. So that testimony is in the record. Thank you. The state further makes an interesting argument, and that is if at a new trial the jury were to hear testimony from both Jobe and Richmond, that such testimony in effect would cancel each other out, and that the jury would find the expert testimony inconclusive and simply reject it all. Now the defendant questions that assertion because I think it's more logical that the jury would probably accept one expert's testimony or the other, but assume for a moment that the state's assertion is correct, that at a new trial the jury would simply throw out all of the expert testimony, not consider it in arriving at a verdict. Oh, yeah, just talking about conjecture and speculation. Sure, sure, sure. But the state makes that assertion on appeal, and I assume that's correct. What the jury would basically primarily be left with, because again there were other witnesses, but what they would primarily be left with then would be the testimony of the two participants here, Bianca Thomas and Craig Davis, both of them testifying they had consensual sex, both of them testifying there was no crime committed here. Now contrast that with the evidence at the original trial where Thomas testified she was sexually assaulted, the defendant denied it, and there was only one expert testimony that tended to support the testimony of the complainant. I think that establishes a claim of newly discovered evidence of actual innocence, that the new evidence would be non-cumulative, material, and likely lead to a new result on retrial. In summary, the defendant submits that this claim of actual innocence, based on the credibility of the affiance, and of course I cannot vouch for the affiance, Your Honor, it's a matter of the trial judge assessing credibility, but that can't be done at the first or second stage, it can only be done at the third stage, this merited an evidentiary hearing, and that's the reason the defendant respectfully asked this court to remand the cause for third stage proceedings. Thank you. Mr. Ostell. Good morning. Good morning. May it please the Court. Defendant argues that the victim's affidavit recanting a testimony that the defendant sexually assaulted her in the affidavit by an expert obtained years after the trial were newly discovered, or newly obtained as he put it, evidence of defendant's actual innocence. However, the fact that the affidavits were filed after the trial concluded does not make them newly discovered evidence. Recanted testimony, as you know, is regarded as inherently unreliable, and as a result… But it seems to me that that's the affidavit we're really talking about here today. And how do you judge the credibility of an affidavit? Don't you have to get the affidavit on the stand and work them over a little bit and see, is that the way it's done? Well, in terms of allegations of perjury, these don't establish actual innocence. And I think defense counsel basically conceded that point. But as far as the actual innocence claim, if she says it didn't happen, the alleged victim says, you know what, I lied, it didn't happen, now while they're a suspect, the law is clear they're a suspect, it doesn't mean you just disregard them or you throw them out. It means you've got to judge the credibility of the affidavit and you look at it with a jaundiced eye maybe. But how do you do that without an evidentiary hearing? I can't answer that question. I mean, that would be one way to do that. And of course, one little concept is... Could you do it another way? Well, to judge you, we also had defense counsel neglected to mention that we did have Candace Howard also testify. And she testified that she came and found the victim lying on the couch in a stupor essentially, as if she'd been propped up. And at that time, the victim was responsive enough... Sorry, had some problems this morning. She was responsive enough to say that the defendant had raped her and Candace testified to that fact. And so we have that additional testimony that was put out by the victim at the time that she had been sexually assaulted by the defendant. And she certainly is not... What was the time interval? I'm sorry? What was the time interval? I'm not clear from the record. The time interval is a little hazy from the record as to how much time transpired between... We do know that the defendant went out or made a phone call and got Candace Howard to the house and said, I don't want any police involved. I don't want any DCF involved. I want to get her to the hospital. And so he's trying to cover up something. I mean, you can say DCFS, you don't want them involved because maybe there's... But there's no testimony that there were problems in the household where DCFS would be involved in a potential negligence situation. Well, you've got somebody, I mean, at least arguably, you've got somebody in the house with an overdose of drugs, and that usually isn't something that excites DCFS about the safety of the children also. Well, certainly. That's true. But when he specifically says, I don't want the police involved, why not? Because, you know, obviously there's some thought of potential guilt here. Well, if it aren't all these kind of arguments, like third stage kind of evidentiary arguments as to why... In other words, if you put this woman on a stand in the third stage hearing and the trial judge finds her not credible, then things look bad for the defendant as far as getting her trial. But if the trial judge finds her recantation credible, there's another ballgame in it. Certainly it could be, if that were the case. But one thing that the defendant had the burden of showing that other evidence of perjury could have been discovered through due diligence, and he didn't plead and argue due diligence regarding that in his brief, and failed to meet his burden regarding the recantation being newly discovered evidence. And we also have the issue... This is recantation testimony. I'm sorry, sir? You've got a person testifying in trial one way, and you've got now a person making statements that are the opposite. Certainly. Okay. Well, if they could... There wouldn't have been a conviction if they testified that way the first time. Most likely. I can't guarantee that because obviously we can't... There's another witness. And we certainly had the expert who gave some information and opinion that she would not have been able to consent to having sex because of the level of vicodin and the effects of the vicodin at that time. And one other thing that regarding this allegation, we don't have any allegation that the prosecution participated in putting up... Even if this was a false testimony, there's no allegation that the state participated, that they knew that this... So that's not the argument by the other side, is it? They're not talking about the perjury aspect. They're talking about actual innocence. Right, but how do you get to actual innocence if you don't have perjury? Well... I mean, they're tied together, Your Honor. They're not separate issues because without having that perjury proven, you can't show the actual innocence. They're certainly related, but I think the law treats them differently. And let's ask a bigger question. Listen, if this affidavit is correct, and we won't know until... But what interest does the state have in keeping an innocent man in prison for a rape he didn't commit? Well, certainly the state would not have an interest in keeping an innocent person in prison, that's true. Well, so what's anybody got to lose by an evidentiary hearing? That's what I'm wondering. I mean, if... What's the downside? I can't say that there is necessarily a downside. Of course, you can talk about judicial resources, but that pales in comparison to a person spending years in jail. I understand that. But what we have is a recantation that doesn't necessarily prove innocence. It's just... It goes to the weight of the evidence. And when we get into... People did... There was no showing whatsoever that the people put on any kind of perjury testimony. And there's no claim that that was done by anyone. And the act of the person testifying falsely is an act of a private individual for which there's no remedy under the Due Process Clause. Well, yes, there is. And that's the actual innocence claim under a post-conviction petition. I mean, it's not... In other words, the prosecutor could have had a pure, clean heart. I'd hate to think that the prosecutor would intentionally use perjury testimony to put somebody in jail. So, but... That's one thing. So if the prosecutor had a pure heart, believed everything that this woman said, and then finds out later if, in fact, she lied. Now, as we know, there's other reasons to recant testimony. And that's what... Those issues, we usually ferret it out, aren't they, now, at an evidentiary hearing, at a third-stage hearing, so you can find out, is her recantation credible? And, I mean, I guess I'm just perplexed as to why the state even objected to a third-stage hearing on this affidavit. It's a mystery to me. Well, because... In part because the affidavit is inherently suspect, because it is a recantation. And because we don't have a showing that the people put on a perjury testimony. I mean... And it is, as we... You know, the legal principle that has been stated, that perjury is where the state is not involved, is not, according to McDonald, anyway, in citing the Brown case in Illinois Supreme Court, that there's no remedy under the Due Process Clause for an individual witness where the prosecution is not involved in that. So, I understand that going to the evidentiary hearing would certainly potentially resolve that conflict, but under legal precedent, there would certainly be no requirement to do so, and we're not necessarily going to get to proving actual innocence one way or the other. I mean, well, we're likely to have, if we have a third stage, and they say, well, she's credible, then what do we do? We go back and we have a new trial. Well, I guess... Maybe. Yeah. Yeah, potentially. That's correct. And the... It seems to me the state's taking the argument that the tenet of the law, that these recantations are inherently suspect, and they're translating that into, well, you can just throw them out at the second stage and don't worry about them. Well, inherently... I mean, you still have to look at... Like, say, you can't judge the credibility of a piece of paper, and you've got to look at the witness. And, I mean, if... And perhaps, I suspect as Justice Carter might have just suggested, if the judge would find this recantation credible, the state might even decide not to retry this stuff under that situation. If this lady convinced everybody that she lied the first time and she was telling the truth now, there might not even be another trial. Who knows? Certainly, that's a possibility. I wouldn't discount that at all. I mean, we have a lot of case laws that suggest that people who are drug addicts, their testimony is suspect in criminal cases. Certainly. Yet, there are a lot of convictions based on the testimony of the drug addict purchasing from the dealer. Absolutely. And the state's the one who's putting the drug dealer out? That's correct. I mean, the drug addict. Right. And the fact that they're a drug addict, of course, does not make them not credible. It just makes them a drug addict, and you have to weigh that evidence. With suspicion. Certainly. Certainly. Because, especially if the individual is under the influence at the time that they witnessed the events, and that's the case, you know, witness occurrence. Or lying. Yeah. Certainly. Credibility. One thing I think is important to consider here is that the affidavits that were attached didn't get attached until the amended post-conviction came on. The defendant, when he did his pro se, perhaps he didn't know the rules well enough, you know, being a pro se defendant, to attach the affidavits. But if that's the key for him, that he's got to get this perjured testimony, this claim of perjured testimony, you would think that he would have obtained those, but it wasn't obtained until later, years later, in fact, after he filed his pro se, when he had counseled. Where was the defendant when he drafted his pro se petition? Well, certainly he was in prison. Would you see that it might be a little tough to get an affidavit from somebody on the outside when you're in the penitentiary? You know, when you're acting on your own? Well, he did have the information from the victim, so obviously he knew that she was going to recant her testimony, or claiming to recant her testimony, so he had communication with her, or with someone, and so that communication could have happened to get the affidavit also. There's no law to say this was too late in the game. No, because he did file his post-conviction within his first pro se, which I believe was within the first year, and then it was, I think, another two to three years before we finally had the amendment with the affidavits actually attached. And in fact, those kind of little tidy-up things, that's the reason that we then have the court appoint an attorney to kind of make everything so that lawyers like it, you know, so they don't make this fellow try to do all this stuff pro se. I mean, is that the reason that the lawyers appointed for him, so he can do stuff like that? Not disputing that at all, that's absolutely correct, and because they are pro se, they're not trained in the law, they do need that assistance. I do have to consider that we did have a hearing in the second stage, it wasn't a first-stage dismissal, so the state's attorney and prosecution did file their motion against, there was a hearing on it, it was considered, all the arguments were considered there, and so we didn't just have a blanket ruling by the trial judge on this post-condition, we actually had a consideration of the separate arguments and such at that time. But you'd agree that one thing we didn't have was an evidentiary hearing? Absolutely. Can't deny that, sir. Okay. Are there no other questions? No, you've been a good soldier. Yeah, I'm sorry? You've been a good soldier. Thank you, it's been a little tough here for you this morning, but you did a great job, thanks. Thank you very much. Mr. Fisher, do you have any rebuttal? Just a few points I'd like to make. The state references Candace Howard, recognizing that the state certainly acknowledged Howard comes upon the scene after whatever took place or didn't take place. She wasn't an eyewitness, and even Richmond's affidavit, I don't think, says that she would never have fallen into a stupor or unresponsive state as a result of the Vicodin. The question is, at the time of the sexual incident, was she able to consent, and Howard could shed no light on that particular point. Another important point I think to make is that there was really no other evidence here as to the sexual allegations. By that I mean there were no third-party eyewitnesses to what happened between the two of them. There was no physical evidence as to sexual assault. I believe at the hospital a sexual assault nurse was brought in, but no evidence was found. That doesn't mean that nothing happened, but there was nothing showing that something happened. So basically this case came down to the complainant's testimony against the defendant's testimony. And under those circumstances where the complainant recants, you have to have an evidentiary hearing. It's not as if there was other overwhelming evidence. Oh, there was the expert testimony. Right, right, right. And now we have conflicting expert testimony at this point. Another interesting point is the case law indicates with respect to recantation affidavits that particularly where the post-conviction judge is different from the original trial judge, that there's especially a need there for the post-conviction judge to have an evidentiary hearing because this is going to be the first time that that particular judge will be able to see and hear the recantation witness testify and assess her credibility. And in fact, in this case, the post-conviction judge is different from the original trial judge. The last thing, obviously in retrospect, because it muddied the waters, it would have been much better, I think, if defendant would not have included the separate perjury charge or if the public defender would have simply deleted that charge.  of knowing use by the prosecution of perjury pertains generally to a witness other than the complainant. And here where it's the complainant saying I lied, it's a different circumstance because that goes to a claim of actual innocence in conjunction here with the affidavit of Mr. Richmond. So for all these reasons, the defendant, again, asks Your Honors to simply remand this cause for an evidentiary hearing. Thank you, Mr. Fisher. Thank you. Mr. Roscoe, thank you also for your arguments this morning. This matter will be taken under advisement and written disposition. There will be issues. Right now we'll be in a brief recess for a panel change before the next case.